LIZZIE. The (MEAGHER v.).   See Case No. 9,377.

LIZZIE HOPKINS, The (MYERS v.).   See Case No. 9,993.

---

## Case No. 8,422.

### The LIZZIE MAJOR.

### LOUD et al. v. PHILADELPHIA & READING R. CO.

[8 Ben. 333.] [1]

District Court, S. D. New York. Jan., 1876.

COLLISION AT SEA—STEAMER AND SCHOONER— LIGHTS—BURDEN OF PROOF.

1. A collision occurred in the Atlantic Ocean, off the coast of New Jersey, between the steamer

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

A. and the schooner L. M., on the evening of February 2, 1875. The steamer was bound from New York to Wilmington, and the schooner was bound up the coast to New York. The wind was from the S. W. or S. S. W., and the schooner was on her port tack. In her behalf it was alleged that she was heading N. N. W.; and that both of the lights of the steamer were seen on her starboard bow, but the red light was shut in and the green light alone remained in view, and the schooner held her course without change, till the vessels were a few lengths apart, when the steamer suddenly ran across the schooner's bow, and, in answer to a hail from the steamer, the schooner's helm was ported, but she struck the steamer's port quarter with her bowsprit. On behalf of the steamer it was alleged, that the steamer was heading S. by E.; that the red light of the schooner was seen about two points on the steamer's port bow; that the steamer's helm was ported, and her course changed to S. by W.; and that the schooner's helm was starboarded and her course changed towards the steamer, and she kept on till she ran into the steamer. Cross-libels were filed by the owners of the respective vessels: Held, that it was the duty of the steamer to keep out of the way of the schooner, or to establish an excuse for not having done so.

2. It was impossible to reconcile the evidence that only the schooner's red light was seen over the steamer's port bow, with the evidence that only the steamer's green light was seen over the schooner's starboard bow; and no satisfactory conclusion as to the real state of the facts could be arrived at from the evidence.

3. The burden of proof was on the steamer, to show that the schooner had changed her course.

4. She had failed to establish such fact, and must be held solely liable for the collision.

Benedict, Taft & Benedict, for steamer.
Goodrich & Wheeler, for schooner.

BLATCHFORD, District Judge. These are cross-libels, growing out of a collision which took place in the Atlantic ocean, off the coast of New Jersey, on the 2d of February, 1875, in the evening, between the steamer Achilles, belonging to the Philadelphia and Reading Railroad Company, and the schooner Lizzie Major, whereby both vessels were injured. The steamer was bound from New York to Wilmington, North Carolina, and the schooner was bound up the coast to New York.

The libel in the first case, that against the schooner, was filed on the 26th of February, 1875. It alleges, that, after passing Sandy Hook, the wind at the time blowing a strong breeze from the southwest, the steamer heading at the time south by east, those on board of her discovered a vessel, which proved to be the schooner, showing her red light, about three-fourths of a mile distant and about two points on the port bow of the steamer; that the steamer's wheel was immediately ported, and her course changed to south by west, the schooner still approaching, showing her red light; that, when the schooner was about four points on the port bow of the steamer, her helm was put hard-a-starboard, and the steamer's helm was then hove hard-a-port; that the schooner, by this manoeuvre, changed her course, so as to head for the steamer's fore rigging, and showing her green light; that the schooner then saw that a collision

was imminent and put her helm a-port, but too late to avoid a collision, she striking the steamer on the port side; and that the schooner was guilty of negligence, in improperly changing her course from the course she was on when she was first seen by the steamer, which would have carried her far to the eastward of the steamer, and in not keeping a proper lookout, and in not sooner seeing the steamer, and in otherwise not properly navigating; and that the collision was the result of the careless, unskillful and improper conduct and management of those on board of and navigating the schooner.

The answer to that libel was sworn to on the 9th of March, 1875, and filed seven days thereafter. It alleges, that the wind was blowing a moderate breeze from the south south west, and the weather was clear; that the schooner had her regulation lights set, as required by law, and they were burning brightly, at the time of the collision; that, when the schooner arrived at a point opposite Sandy Hook beach, and close along the Sandy Hook shore, she had the Sandy Hook light one or two points on her port bow, her booms being swung over the starboard rail, about four points off; that she was steering north north west; that the steamer was discovered showing her two lights, about two or three miles distant, and on the starboard bow of the schooner; that the schooner held her course without any change whatever, but, when the vessels were a few lengths apart, the steamer suddenly ran across the schooner's bow, and some one on board of the steamer hailed the schooner to put her helm hard up, which was done, and the main sheet eased off, but the steamer struck, with her port quarter, the bowsprit of the schooner; and that the steamer was guilty of negligence in changing her course and running across the bows of the schooner, which manoeuvre was the cause of the collision.

The libel in the second case is, in all its material allegations, like the answer in the first case. It was sworn to on the 9th of March, 1875, and filed the next day.

The answer in the second case was sworn to and filed on the 15th of April, 1875. It differs, in its allegations, from the libel in the first case, in two particulars. One of them is, that the answer alleges, that, when the steamer's wheel was hove hard-a-port, after the schooner starboarded, the course of the steamer was changed thereby some four or five points more to the starboard hand. This allegation is not found in the libel in the first case. The other particular, and it is a very material one, is, that the libel in the first case alleges, that the schooner, when she put her helm hard-a-starboard, changed her course so as to head for the steamer's fore rigging and showed her green light, whereas, the answer in the second case, instead of alleging that the schooner changed so as to head for the

steamer's fore rigging, avers merely that she changed her course toward the steamer, and the answer omits entirely the averment that the schooner then showed her green light. This is a very material point and a very material discrepancy. The story of the libel in the first case is, in substance, that those on board of the steamer saw at first the red light of the schooner, and saw no other light on the schooner from that time until the schooner starboarded, and then saw the schooner's green light, the schooner heading for the steamer's fore rigging. The implication in such libel, from the allegation therein that the schooner, before she starboarded, had got to be four points on the port bow of the steamer, is, that the schooner, by starboarding, shut in her red light to the view of those on the steamer and showed to them instead her green light. The answer in the second case tells a very different story in this particular,—and is to the effect, that the schooner, by starboarding, did not come around so as to head for the steamer's fore rigging and shut in her red light and show instead her green light, but only changed her course so as to head more towards the steamer, and continued to show her red light, and only her red light, and did not come around so far as to hide her red light and show instead her green light.

Nelson, the look-out on the steamer, who was on duty forward, about 10 feet from the steamer's head, testifies, that he first saw the light of the schooner when it was from three-quarters of a mile to a mile off; that he saw it on his port bow; that it was a red light; that he reported it; that the steamer then ported; that he continued seeing the red light until the schooner was close up; and that he did not see the green light of the schooner until the schooner's boom ran over the deck of the steamer. There is nothing in this testimony to show any change of course by the schooner. It shows that he thought the light he first saw was the red light; that he continued to see a light on the schooner all the time; that he thought the light he saw all the time down to the time the schooner's boom came across the deck of the steamer was the same light he first saw, and was the red light; and that, when the schooner's boom was coming across the steamer's deck, he thought the light he saw was the green light. The light he then saw must have been the green light, as the schooner's jib boom came over the port side of the steamer. He does not say that he saw one light disappear by being shut in and another light come afterwards into view. There is nothing in his testimony that is inconsistent with the fact, that the light he saw all the time on the schooner was the green light, and that he mistook it for the red light until it was close at hand. Adopting the conclusion that the light was all the time the red light until close at hand, and that then no red light was visible, but only

a green light, it was easy to jump at and swear to the inference, that the schooner starboarded and changed her course so as to shut in her red light and show her green light, this inference being strengthened by the fact that the steamer was porting all the time. But, if the schooner was really all the time showing her green light to the steamer, over the port bow of the steamer, and was holding her course, she was on a course that was drawing on to the course of the steamer, and the steamer, by porting, was crossing the bows of the schooner. If, as is the testimony from those on the schooner, the schooner was all the time steering north north west and if, as is the testimony of those on the steamer, the steamer was at first steering south by east, and then, when she saw the schooner's light, ported so as to head south by west, the schooner was at first drawing one point on to the course of the steamer, and then three points on to the course of the steamer, and the steamer was all the time promoting the collision.

Artis, the master of the steamer, who was in the pilot-house, at the starboard forward window, testifies, that he saw the red light of the schooner approaching about one or two points on his port bow; that, when he first saw it, it was from three-quarters of a mile to a mile off; that he immediately ported, so that, from heading south by east he headed south by west; that, after he made that change, the schooner's light bore about three points and a half on his port-bow; that the schooner got to be about five points on his port side and then starboarded hard-a-starboard and headed for the fore rigging and pilot-house of the steamer, being then from 75 to 100 feet distant from the steamer on her port beam; and that he saw no other light on the schooner before the collision than the red light. The conclusion of this witness, that the schooner starboarded, is based solely on his idea that the light he saw all the time was the red light, and on the conclusion, that, as that light was always seen over the port bow of the steamer, and as the steamer was all the time porting, the collision could not have happened if the schooner had not starboarded. But, if the light he saw was really the green light of the schooner, it would, as the steamer was porting, be brought all the time more and more on the port bow of the steamer, while the steamer was all the time, by porting, crossing the bows of the schooner. Artis saw no change of lights on the schooner. He did not see one light shut in and another one come in its place. He saw one and the same light all the time, as he says. If he saw at first the red light, and if that red light got to be four or five points on the port bow of the steamer, and if the steamer was porting all the time, it was impossible for the schooner to have starboarded so as to hit the steamer, without shutting in her red light

and showing her green light. Yet Artis saw no such appearances.

Tilton, who was in the pilot-house of the steamer, testifies, that he saw the light of the schooner; that, when he first saw it, it was about a mile distant and about a point and a half on his port bow; that it was a red light; that he saw no other light on the schooner; that the steamer was heading south by east when he first saw the light; that the wheel of the steamer was then ported, so that she headed south by west; that he then took the night glasses and looked at the schooner and could see that she was luffing; that the wheel of the steamer was then put hard-a-port immediately; that this brought her up to about southwest by south; that, at the time the wheel was hove hard-a-port, the schooner was not more than 100 feet distant from the steamer; that he saw the green light of the schooner when she was within about 50 feet of the steamer; that the booms of the schooner were on her starboard side, with five points of sheet started; that he saw no changes in her booms or in her sails; that he saw the green light about a point forward of his beam; that it went out of sight again just before the collision; that he could then see the red light again; that he saw both lights of the schooner when her jib-boom was within about 20 feet of the steamer, and then the green light shut in and the red light came in view; and that that was the only time he saw both lights. Tilton does not say that the red light was hid and the green light came into view instead. What it was he saw, that made him think the schooner was luffing, when he looked at her through the night glasses, he does not say. The appearance he saw of the green light alone, and then the red light coming into view, so that he saw both lights at a time, and then the green light going out of view and the red light remaining in view, is the appearance that would be presented by the porting of the schooner just before the collision, on the hail from the steamer for her to port. There is nothing in all this inconsistent with the fact that the light he saw all the time till after the schooner ported was her green light.

Lawson, who was forward on the steamer's deck, near Nelson, testifies, that he saw the red light of the schooner on his port bow; that he did not see the green light at all; that, when he first saw the red light, it was about three points on his port bow and about three-quarters of a mile off; and that he saw the red light all the while up to the collision. He saw no change of lights on the schooner, indicating a change of course. He saw one light all the time, and the same light. There is nothing in his testimony as to the schooner's lights, inconsistent with the fact that the light he saw was really the green light.

It was the duty of the steamer to avoid the schooner. She seeks to excuse her not

having done so, by alleging that the schooner changed her course and thwarted the efforts of the steamer to keep out of the way of the schooner. If the light the steamer saw was the schooner's green light, the mistake of the steamer caused the collision. If the light was really the red light, and the green light was hidden from view by being intercepted by the schooner's jib, still, if the schooner did not change her course, the steamer was in fault for not avoiding her. The review which has been made of the testimony on the part of the steamer shows that such testimony is very inconclusive to show that the schooner changed her course, and that there is scarcely anything more than assertion that she changed, based upon the idea that her red light was first seen, and seen over the port bow of the steamer, and that the steamer ported and still a collision ensued, while the appearance of the lights on the schooner to those on the steamer indicated no such changes and movements of such lights as a change of course by the schooner, by starboarding, would require. It is clearly proved that the green and red lights of the schooner were properly set and were burning brightly all the time.

The testimony on the part of the schooner is very distinct, to the effect that the schooner did not change her course, by starboarding. Tracy, the master of the schooner, who was on deck, close to the man at the wheel, testifies. that the schooner was steering north north west; that he first saw the green light of the steamer about one point on his starboard bow; that he did not see her red light until she was within about four or five of her lengths from the schooner; that with the green light he saw her masthead light; that he held his course until hailed from the steamer to hard-up his wheel, and then he hove his wheel hard-up; that it was after such hail, and after the schooner had fallen off about a point, that he saw the steamer's red light, and he then saw it over his port bow; and that the steamer was not, at any time before the hail, on the port bow of the schooner. This testimony indicates not only that the schooner did not starboard, but that she presented her green light to the steamer's view, and that the steamer, by porting, ran across the bows of the schooner.

W. C. Torrey, who was forward on the schooner, testifies, that he saw the green and red lights of the steamer about two miles off, about two points on the lee bow of the schooner; that then the red light went out of sight, when the steamer was about a mile and a half off; that he saw the red light of the steamer again, when the steamer was about twice her length off; that the steamer then crossed the schooner's bow; and that, before the hail from the steamer, the steamer was not at any time on the port bow of the schooner. This testimony indicates that the schooner presented her green light to the steamer's view and that the steamer would,

if she had not ported, have passed to the leeward of the schooner, in safety.

R. C. Torrey, who was on the deck of the schooner. aft, testifies, that he saw first the green light of the steamer, to the leeward, under the main boom, perhaps a mile and a half off; that just before the collision, the steamer's red light came into view, so that both the green and red lights were seen together by him, and then the green light went out of view, and the red light remained visible; that the schooner did not change her course; and that, before the hail from the steamer, the steamer was at no time on the port bow of the schooner. On this testimony, any change by the schooner, by starboarding or luffing, would have carried her away from the steamer, if made before the steamer ported; and, if made at any time, would have caused the green light of the schooner to be distinctly visible and would have shut in her red light.

O'Reilly, who had the wheel of the schooner, testifies, that he was steering his course north north west, by compass, and kept that course from the time he took the wheel, at 6 p. m., until the hail came from the steamer to hard-up the wheel of the schooner; that he did not see the steamer or her lights until he saw her coming across the bow of the schooner, and then he saw her red light on the port bow of the schooner; and that the master of the schooner, who had been standing near him all the time from 6 p. m., took the wheel, at the hail, and hove it hard-up.

Bickford, who was the first mate of the schooner, and was on the forecastle, clearing away the anchor, says that he saw the starboard light of the steamer first, and saw it on his starboard bow and when the steamer was a quarter of a mile away; that he saw the steamer's red light when she came across his bow and had not seen it before; that the steamer was two or three of her lengths off when he first saw her red light; that, before the hail from the steamer, the steamer was not at any time on the port bow of the schooner; and that, when he saw the steamer's green light, he at the same time saw her mast-head light.

It is, of course, impossible to reconcile the fact that the schooner's red light, and only that, was seen over the port bow of the steamer, with the fact that the steamer's green light, and only that, was seen over the starboard bow of the schooner. No entirely satisfactory conclusion as to the real state of facts can be arrived at from the evidence. I have examined it with care. The burden is upon the steamer to show that the schooner changed her course. She has, in my judgment. failed to do so, and it follows that the libel against the schooner must be dismissed, with costs, and, in the other suit, there must be a decree for the libellants, with costs; with a reference to a commissioner to ascertain the damages sustained by the libellants.